**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THEODORE WASHINGTON, *Petitioner-Appellant*, v. CHARLES L. RYAN, *Respondent-Appellee.* | No. 05-99009 D.C. No. CV-95-02460-JAT |

| | |
|---|---|
| THEODORE WASHINGTON, *Petitioner-Appellant*, v. CHARLES L. RYAN, *Respondent-Appellee.* | No. 07-15536 D.C. No. CV-95-02460-JAT OPINION |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted En Banc March 22, 2016
San Francisco, California

Filed August 15, 2016

Before: Sidney R. Thomas, Chief Judge and William A.
Fletcher, Johnnie B. Rawlinson, Richard R. Clifton, Jay S.
Bybee, Consuelo M. Callahan, Carlos T. Bea, Milan D.
Smith, Jr., Sandra S. Ikuta, Morgan Christen and Paul J.
Watford, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge Bybee;
Dissent by Judge Watford

## SUMMARY[*]

### Habeas Corpus / Fed. R. App. P. 4(a) / Fed. R. Civ P. 60(b)

In appeal No. 07-15536, the en banc court reversed the district court's order denying Arizona death row inmate Theodore Washington's motion under Fed. Civ. P. 60(b) to vacate and renter its judgment denying his 28 U.S.C. § 2254 habeas corpus petition so that his appeal could be timely, and remanded for the district court to vacate and reenter its judgment *nunc pro tunc* as of June 9, 2005, in a case in which Washington filed a notice of appeal one day beyond the 30-day window set forth in Fed. R. App. P. 4(a)(1) and did not request an extension until well after the grace period expired.

The en banc court rejected the State of Arizona's argument that the district court lacked authority to vacate its judgment and that this court is without jurisdiction to hear the appeal. Having considered the interests of finality, the danger of prejudice to the State, that Washington missed the filing deadline by just one day, and the absence of any indication of bad faith by his lawyers, the en banc court concluded that relief was required under Rule 60(b)(1) or, alternatively, Rule 60(b)(6).

The en banc court wrote that after the district court reenters its judgment, Washington's appeal from the denial of his § 2254 petition may proceed in appeal No. 05-99009.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Bybee, joined by Judges Callahan, Bea, Ikuta, and Watford, dissented. He wrote that the majority ignores the holding in *Bowles v. Russell*, 551 U.S. 205 (2007), that the FRAP timely filing requirements are mandatory and jurisdictional, by shoehorning an essentially equitable exception to the jurisdictional requirements of Fed. R. App. P. 4(a) into Rule 60(b).

Judge Watford also dissented because *Bowles* held that the filing deadline for civil appeals is jurisdictional and thus not subject to equitable exceptions. He offered thoughts as to why the *Bowles* holding is worth revisiting, should the Supreme Court decide to take up the issue.

## COUNSEL

Gilbert H. Levy (argued), Law Offices of Gilbert H. Levy, Seattle, Washington, for Petitioner-Appellant.

Laura Chiasson (argued), Assistant Attorney General; Terry Goddard, Attorney General; Office of the Arizona Attorney General, Tucson, Arizona; for Respondent-Appellee.

Nathaniel C. Love (argued), Sidley Austin LLP, Chicago, Illinois; Mark E. Haddad, Sidley Austin LLP, Los Angeles, California; David M. Porter, Co-Chair, NACDL Amicus Committee; for Amicus Curiae National Association of Criminal Defense Lawyers.

# OPINION

CHRISTEN, Circuit Judge:

Theodore Washington, an Arizona death row inmate, filed a notice of appeal ("NOA") thirty-one days after the district court denied his petition for writ of habeas corpus. Federal Rule of Appellate Procedure 4(a)(1) limited the window for filing this notice to just thirty days, but the rules also provided a grace period for requesting an extension of time. Due to a combination of circumstances—including an error by the court—Washington did not request an extension because he did not learn that his NOA was one business day late until well after the grace period expired. Washington filed a motion under Federal Rule of Civil Procedure 60(b) asking the district court to vacate and reenter its judgment so that his appeal could be deemed timely. The district court denied his request, and he appeals.

The State argues that the district court lacked the authority to vacate and reenter its judgment, and that our court is without jurisdiction to consider Washington's appeal. We disagree.

The filing deadline in Rule 4(a)(1) is mandatory and jurisdictional, but from their inception, the rules have also given district courts authority to grant relief from judgment. This is a death penalty case and we are mindful that both of Washington's co-defendants received relief from their death sentences. Dismissal of Washington's appeal would prevent any appellate review of the denial of his potentially meritorious habeas petition, yet it was a court error that prevented Washington from seeking an extension of time expressly allowed by the Rules. Therefore, having

considered the interests of finality, the danger of prejudice to the State, that Washington missed the filing deadline by just one day, and the absence of any indication of bad faith by his lawyers, we conclude that relief was required under Rule 60(b)(1) or, alternatively, 60(b)(6). We reverse the district court's order and remand for the district court to vacate and reenter its judgment *nunc pro tunc* as of June 9, 2005. Once judgment is reentered, Washington's appeal from the denial of his petition for writ of habeas corpus will be timely and may be considered on its merits.

## BACKGROUND

Washington is one of three co-defendants who were convicted in 1987 of first degree murder and other offenses after two of them entered a home and robbed and shot its occupants. *State v. Robinson*, 796 P.2d 853, 856–58 (Ariz. 1990). All three defendants were sentenced to death. One of them, James Mathers, prevailed on direct appeal when the Arizona Supreme Court ruled that there was insufficient evidence to support his conviction. *See State v. Mathers*, 796 P.2d 866, 873 (Ariz. 1990) (In Banc). The second co-defendant, Fred Robinson, argued in his federal habeas petition that the state trial court's application of a "cruel, heinous, and depraved" sentencing enhancement was arbitrary and capricious, and that counsel was ineffective at the penalty phase of the defendants' joint trial. *See Robinson v. Schriro*, 595 F.3d 1086, 1110–12 (9th Cir. 2010). Robinson was granted relief on habeas review, *see id.* at 1113, and on remand the state trial court resentenced him to sixty-seven years to life, *see* Judgment and Sentence, Case No. S1400CR87-14064 (Yuma Cty., Ariz., Oct. 25, 2011).

Washington's case initially took the same procedural path as Robinson's. The Arizona Supreme Court affirmed Washington's conviction on direct appeal. *State v. Robinson*, 796 P.2d at 856. Washington filed a petition for post-conviction relief in the state trial court, which remarked that it had "a great deal of difficulty finding a basis to hold this defendant culpable which does not apply, at least equally or in a greater manner, to James Mathers [the co-defendant whose conviction the Arizona Supreme Court overturned for insufficient evidence]. If Mathers, who was present at all times before the entry into the . . . [victim's] residence, was not guilty of conspiring to rob and kill, no greater evidence seems to place this defendant at the scene." Nevertheless, the court denied Washington's petition, and the Arizona Supreme Court summarily denied his petition for review. Washington then filed a federal habeas corpus petition in the District of Arizona. Like Robinson, Washington argued that the state trial court erred by imposing a "cruel, heinous, and depraved" sentencing enhancement, and that he received constitutionally ineffective assistance of counsel during the penalty phase of his trial. Despite these similarities, the course of these cases sharply diverged on federal habeas review.

The district court's denial of Washington's federal habeas petition became final on June 8, 2005, but the court did not indicate whether it would grant a certificate of appealability ("COA"). Washington had thirty days to file a NOA, *see* Fed. R. App. P. 4(a)(1), and the thirtieth day after the district court entered its judgment was Friday, July 8, 2005. Due to a calendaring error by Washington's lawyers, his NOA and motion for a COA were filed on Monday, July 11, 2005, one business day after Rule 4(a)(1)'s filing deadline. The Federal Rules anticipate late filings: Rule 4(a)(5) provides a thirty-day grace period within which parties may request more time

to file a NOA upon a showing of good cause or excusable neglect. *See* Fed. R. App. P. 4(a)(5). Washington had plenty of time to file a motion seeking additional time under Rule 4(a)(5), but due to a court error, he did not receive notice that his NOA was late, so he did not know that he needed an extension of time.

Two circumstances aligned to prevent Washington from learning that his NOA was late within the thirty-day period allowed to seek an extension. First, there were no filings in the district court case, and no entries on the district court docket, for over two and a half months after the NOA was filed. Nothing happened that would have prompted Washington's lawyers to recalculate the Rule 4(a)(1) deadline, so nothing short of spontaneously recalculating its due date would have put Washington's lawyers on notice of their calendaring error. Second, the district court clerk's office did not promptly send Washington's late-filed NOA to the appellate clerk, despite an express directive that it do so. In 2005, Federal Rule of Appellate Procedure 3(d) required the district clerk to "promptly send a copy of the notice of appeal" to the appellate clerk. Fed. R. App. P. 3(d). For reasons not apparent from the record, the district clerk did not comply with this rule. Rather, the clerk waited for the district court to rule on Washington's motion for a COA before sending the NOA to the appellate court. The district court ruled on the motion for a COA on September 30, over two and a half months after it was filed; the clerk then sent the NOA on to the appellate court; and a week after receiving it, the appellate clerk issued an order to show cause why Washington's appeal should not be dismissed as untimely. By then it was too late to seek an extension of time under Rule 4(a)(5), but within six days Washington filed a motion under Rule 60(b) asking the district court to vacate and

reenter its judgment so that his appeal could be decided on the merits.

Washington's motion was premised on Federal Rule of Civil Procedure 60(b)(1) or, alternatively, Rule 60(b)(6). He asked the district court to vacate and reenter its judgment denying his habeas petition either: (1) as of June 9, 2005, thereby rendering his original appeal timely; or (2) immediately, thereby triggering a new thirty-day filing window pursuant to Rule 4(a)(1). The district court concluded that it did not have authority to grant the requested relief, and it denied the motion. The court also reasoned that Washington's case did not qualify for relief under Rule 60(b)(1) or 60(b)(6).

Washington separately appealed the district court's order denying his Rule 60(b) motion. A three-judge panel of our court considered Washington's appeal from the denial of his habeas petition (appeal No. 05-99009) and his appeal from the denial of his Rule 60(b) motion (appeal No. 07-15536). The panel concluded that it lacked jurisdiction to consider Washington's appeal from the denial of his habeas petition because his NOA was filed one day late. *Washington v. Ryan*, 789 F.3d 1041, 1045 (9th Cir. 2015). The panel also affirmed the district court's denial of Washington's Rule 60(b) motion. *Id.* at 1046.

Our court granted rehearing en banc. *Washington v. Ryan*, 811 F.3d 299 (9th Cir. 2015) (mem.). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and we reverse the district court's denial of Washington's Rule 60(b) motion.

## STANDARD OF REVIEW

We review for an abuse of discretion a district court's ruling on a motion for relief from judgment pursuant to Rule 60(b). *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). We review de novo any question of law underlying the district court's ruling. *Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010).

## DISCUSSION

Washington argues that there are three ways this court can reach the merits of his habeas appeal: (1) decide that the district court abused its discretion by denying relief from judgment under Rule 60(b)(1) or 60(b)(6); (2) construe his motion for a COA as a Rule 4(a)(5) motion for an extension of time to file a NOA; or (3) deem his NOA premature, not untimely, because he filed it before the district court issued a COA. The State argues that Rule 4(a)'s time limits, which have a statutory basis in 28 U.S.C. § 2107, are mandatory and jurisdictional, and that Washington's failure to comply with those limits precludes this court from exercising jurisdiction over his habeas appeal.

Rule 60(b) permits the district court to vacate and reenter judgment to restore the right to appeal in limited circumstances. This conclusion is consistent with 28 U.S.C. § 2107, Rule 4(a), and case law from the Supreme Court, our own circuit, and the Sixth and Seventh Circuits. The district court misperceived the extent of its authority to grant Washington's Rule 60(b) motion. Washington's case is in the narrow band of cases for which relief from judgment is appropriate. We therefore reverse the district court's order denying relief. Because we conclude that well-established

authority entitles Washington to relief under Rule 60(b), we do not reach his arguments that we should construe his motion for a COA as a Rule 4(a)(5) motion, or that his NOA was premature.

## I. Washington is Entitled to Relief Under Rule 60(b).

The district court premised its denial of Washington's Rule 60(b) motion on two separate grounds. First, it concluded that Washington sought to use Rule 60(b) to "circumvent the 'mandatory and jurisdictional' provisions of [the 30-day deadline for filing an appeal provided in Rule 4(a)(1)]." Second, the court concluded that, even if Rule 60(b) gave the court authority to reenter judgment for purposes of rendering Washington's appeal timely, Washington would not be entitled to relief under Rule 60(b)(1) or 60(b)(6). We respectfully disagree with both conclusions. Several circuit courts, including our own, have recognized that the ability to vacate and reenter judgment pursuant to Rule 60(b) is consistent with the jurisdictional nature of Rule 4(a)'s deadlines, and the circumstances of Washington's case compel relief under Rule 60(b)(1) or, alternatively, Rule 60(b)(6).[1]

---

[1] The dissent mischaracterizes this decision, and its implications. Our opinion does not rely on the district court's equitable authority or purport to extend the Rule 4(a)(5) deadline to conclude Washington is entitled to relief. It relies on the court's express authority under Rule 60(b). Recognizing this narrow authority does not "put[] a hole right through" the Rule 4(a) appeal deadlines, as the dissent fears. Courts have used this authority, sparingly, for decades to restore the thirty-day window to file an appeal; a handful of cases have been found to warrant this type of relief. To reach its extravagant conclusions, the dissent repeats a few key errors: it misconstrues our own circuit's case law, *see In re Stein*, 197 F.3d 421 (9th Cir. 1999), misstates case law from our sister circuits, and

### A. In Exceptional Cases, Rule 60(b) Authorizes District Courts to Vacate and Reenter Judgments to Reset the Time to Appeal.

The Supreme Court "has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982) (per curiam)). But the Supreme Court has also recognized that a district court's authority to provide relief from judgment includes the authority, in certain circumstances, to vacate and reenter a judgment to restore the opportunity to appeal. *See Hill v. Hawes*, 320 U.S. 520 (1944). The Federal Rules have been amended since *Hill*, and some of those amendments limit the relief available to parties who fail to timely appeal due to lack of notice that judgment was entered. But Washington's case is not a lack-of-notice case, and Congress has neither amended the rules nor enacted a statute to abrogate the district court's authority to vacate and reenter judgment where other grounds support a Rule 60(b) motion.**[2]**

---

erroneously asserts that the majority relies solely on a missed filing deadline. The dissent also relies heavily on *Bowles v. Russell*, 551 U.S. 205 (2007), though *Bowles* says nothing about Rule 60(b). In fact, *Bowles* relies on another Supreme Court case that strongly supports our decision.

**[2]** The Federal Rules and its amendments were authorized by the Rules Enabling Act, *see* ch. 651, 48 Stat. 1064 (1934) (codified as amended at 28 U.S.C. §§ 2071–2077 (2012)), under which Congress delegated to the Supreme Court its rule-making authority over the "practice and procedure" of federal courts, *United States v. Jacobo Castillo*, 496 F.3d 947, 954 (9th Cir. 2007) (en banc) (quoting 28 U.S.C. § 2072(a)). The Rules Enabling Act also established a committee to evaluate and propose amendments to the Rules. *See* 28 U.S.C. § 2073. The Supreme Court transmits proposed amendments to Congress no later than May 1 of the

In *Hill*, the Supreme Court recognized that district court authority to vacate and reenter judgment includes the authority to do so for the purpose of restoring the opportunity to appeal. *See id.* at 523–24. Hill missed the original deadline to file his appeal because he did not receive timely notice of the district court's judgment. *Id.* at 521. The Supreme Court affirmed the district court's order vacating and reentering its judgment in order to trigger a new filing deadline. *Id.* at 523–24. In doing so, the Court confirmed that the district court's reentry of judgment was consistent with the general authority it retained over its cases. *See id.*

The dissent reads *Hill* as a narrow decision limited to parties who do not receive notice of judgment, and to filing deadlines established by rule, not statute. But *Hill* is not so limited. *Hill* did not question that the district court lacked authority to extend the appeal deadline, *id.* at 523, yet it approved the district court's decision to reenter judgment to restore the opportunity to appeal. The *Hill* dissent argued that the majority's decision would allow federal judges "to make a dead letter of the *statutory* limit of the period for appeal." *Id.* at 526 (Stone, C.J., dissenting) (emphasis added). And, contrary to the dissent's interpretation, the Rules Committee also read *Hill* as creating a broad form of relief. It warned

year in which the amendments are to take effect and the amendments are deemed adopted on December 1 of the same year unless Congress rejects them. *See* 28 U.S.C. § 2074(a). The dissent suggests Rule 4(a) rests on different authority because it "codifies" and "implement[s]" 28 U.S.C. § 2107, but Congress has amended § 2107 to track Rule 4(a), not the other way around. *See* 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.3 (4th ed. 2016) (describing history of § 2107). The dissent offers no authority for its implied assertion that the Federal Rules of Appellate Procedure have a superior statutory foundation than that of the Federal Rules of Civil Procedure.

that the decision "g[a]ve the district court power, in its discretion and without time limit . . . to vacate a judgment and reenter it for the purpose of reviving the right of appeal." Fed. R. Civ. P. 77 advisory committee's note to 1946 amendment. In the aftermath of this decision, the Committee responded by trimming, not eliminating, the authority *Hill* recognized.

By 1991, the Committee had amended the Federal Rules in three ways significant to Washington's case.[3] First, the Committee added Federal Rule of Appellate Procedure 4(a)(5), which provided a thirty-day grace period to allow a litigant who missed Rule 4(a)(1)'s filing deadline an opportunity to move for an extension of time to file an appeal. *See* Fed. R. App. P. 4(a)(5). Parties may be entitled to an extension under Rule 4(a)(5) if they show excusable neglect or good cause. Fed. R. App. P. 4(a)(5)(A)(ii).

Second, the Committee added Rule 4(a)(6), which is specific to cases in which parties miss Rule 4(a)(1)'s deadline due to lack of notice of the district court's judgment. *See* Fed. R. App. P. 4(a)(6). This rule authorizes an "outer time limit" of 180 days to move for an extension of time to file an appeal. Fed. R. App. P. 4(a)(6) advisory committee's note to 1991 amendment. A district court may not otherwise relieve parties from failing to file a timely appeal due solely to lack of notice of judgment. *See* Fed. R. Civ. P. 77(d) ("Lack of notice of the entry [of judgment] does not . . . authorize the

---

[3] During the same time period, Congress enacted § 2107 and periodically amended it to track these rule amendments. *See* 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.3 (4th ed. 2016).

court to relieve . . . a party for failing to appeal within the time allowed, except as allowed by [Rule] 4(a).").

Third, the Committee expanded the grounds for relief under Rule 60(b) to encompass the "various kinds of relief from judgments which were permitted in the federal courts prior to the adoption" of the rules. Fed. R. Civ. P. 60 advisory committee's note to 1946 amendment; *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 235 (1995) (recognizing that Rule 60(b) "codified judicial practice that pre-existed"). As *Hill* demonstrates, these "various kinds of relief" included the district court's ability to grant relief from judgment for the purpose of restoring the right to appeal. Many courts recognized the validity of using Rule 60(b) for this very purpose.[4] *See also Klapprott v. United States*, 335 U.S. 601, 615 (1949) (recognizing that Rule 60(b) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice").

After the addition of Rule 4(a)(6), we held that Rule 60(b) is not available to restore appeal rights in lack-of-notice cases. *In re Stein*, 197 F.3d 421, 423, 426 (9th Cir. 1999) (explaining that our case law allowing Rule 60(b) relief to retrigger appeal rights was rendered "obsolete and inapplicable" to lack-of-notice cases "by the 1991 addition of

---

[4] *See, e.g.*, *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983); *Burkett v. Cunningham*, 826 F.2d 1208, 1217 (3d Cir. 1987), *abrogated on other grounds by Betterman v. Montana*, 136 S. Ct. 1609 (2016); *Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir. 1985), *superseded by rule*, Fed. R. App. P. 4(a)(6), *as recognized in Clark v. Lavallie*, 204 F.3d 1038, 1040 (10th Cir. 2000); *Wilson v. Atwood Grp.*, 725 F.2d 255, 258 (5th Cir. 1984) (en banc); *Hensley v. Chesapeake & Ohio Ry. Co.*, 651 F.2d 226, 227 (4th Cir. 1981); *Mizell v. Attorney Gen. of State of N.Y.*, 586 F.2d 942, 944 n.2 (2d Cir. 1978).

Rule 4(a)(6)"). Our sister circuits agreed. *See Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 361 (8th Cir. 1994) ("[T]he plain language of both Fed. R. App. P. 4(a)(6) and Fed. R. Civ. P. 77(d) addresses specifically the problem of lack of notice of a final judgment."); *see also Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*, 279 F.3d 1306, 1311 (11th Cir. 2002) (same); *Clark v. Lavallie*, 204 F.3d 1038, 1041 (10th Cir. 2000) (same).

This history shows that Congress acted in the years since *Hill* to narrow the circumstances under which late-filed appeals may be accepted, but despite several sets of amendments, changes to § 2107 and the Federal Rules have not abrogated district courts' traditional authority to grant relief from judgment in cases—like Washington's—where "a notice of appeal is filed late for reasons other than lack of notice." *Tanner v. Yukins*, 776 F.3d 434, 441 (6th Cir. 2015). Indeed, after the 1991 amendments, several courts have had occasion to explicitly recognize that Rule 60(b) may be used, sparingly, to restore the right to appeal in extraordinary cases when parties rely on grounds other than lack of notice.

One such case was *Mackey v. Hoffman*, where our own court followed the Supreme Court's reasoning in *Maples v. Thomas*, 132 S. Ct. 912 (2012), and identified attorney abandonment as an extraordinary circumstance that justified relief under Rule 60(b).[5]  682 F.3d 1247, 1253 (9th Cir. 2012); *see also Lal*, 610 F.3d at 524 (recognizing attorney's

---

[5] In *Maples*, the Court held that petitioner's state post-conviction attorneys' abandonment, which caused petitioner to miss a state filing deadline, constituted an "extraordinary circumstance[] beyond his control" that lifted the state procedural bar to his federal petition. *Maples*, 132 S. Ct. at 924 (quoting *Holland v. Florida*, 560 U.S. 631, 659 (2010)).

gross negligence as extraordinary circumstance justifying relief from judgment where counsel failed to prosecute a wrongful death action).   Mackey was a federal habeas petitioner who learned of the judgment entered against him after Rule 4(a)(6)'s 180-day period had passed because his attorney abandoned him and never informed him of the status of his case. *Mackey*, 682 F.3d at 1249–50.  Citing *In re Stein*, the district court concluded that it lacked discretion to provide relief from judgment under Rule 60(b).  *Id.* at 1250.  We reversed, and explained that the limitations on district court authority identified in *In re Stein* apply only to Rule 77(d) lack-of-notice cases. *See id.* at 1252.  *Mackey* and *In re Stein* are consistent with the conclusion that Rule 60(b) relief remains available for extraordinary cases outside of the lack-of-notice context.[6]

   The Seventh Circuit reached a similar conclusion in *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), where a federal habeas petitioner missed the deadline to file a NOA after his counsel abandoned him.  *Id.* at 849.  The Seventh Circuit saw "no reason to distinguish between actions at the state level that result in procedural default and the consequent loss of a chance for federal review"—describing the posture in *Maples*—"and actions at the federal level that similarly

---

   [6] The dissent accuses us of sub silentio overruling *In re Stein*, but this is plainly wrong.  We simply recognize, as our court previously recognized in *Mackey* and as we did in *In re Stein* itself, that *In re Stein*'s holding is limited to lack-of-notice cases. *See Mackey*, 682 F.3d at 1252 ("Unlike the appellants in *In re Stein*, Mackey is not seeking to utilize Rule 60(b)(6) to cure a Rule 77(d) 'lack of notice' problem."); *In re Stein*, 197 F.3d at 426 (distinguishing prior Ninth Circuit case law that permitted Rule 60(b) relief to restore appeal rights as "rendered obsolete and inapplicable to *this type of [lack-of-notice] case*") (emphasis added).

lead to a procedural default that forfeits appellate review"—as was the posture in *Mackey*. *Id.* at 854.

Finally, notwithstanding Rule 4(a)(1)'s jurisdictional time limit, the Sixth Circuit held in *Tanner* that the district court had authority to vacate and reinstate its denial of a habeas petition pursuant to Rule 60(b). 776 F.3d at 441. This afforded a new thirty-day window to file an appeal. Tanner was nearly illiterate but she managed to prepare an appeal from the denial of her habeas petition with the assistance of a prison writ-writer. *Id.* at 436. She wound up filing it one day late because her prison unit was placed on lockdown, and prison guards threatened to put her in solitary confinement if she left her cell to meet her filing deadline. *See id.* The district clerk's office processed the appeal, not realizing that it was late. *Id.* at 436–37. By the time the circuit court received the NOA, the thirty-day period for requesting an extension had expired, and Tanner's appeal was dismissed for lack of jurisdiction. *Id*. at 437. Tanner responded by filing a successful 42 U.S.C. § 1983 lawsuit against the guards who interfered with her constitutionally guaranteed access to the court. *Id.* Armed with a judgment recognizing the unconstitutional nature of the guards' actions, Tanner sought relief in her habeas case under Rule 60(b)(6). *Id.* As the district court did in Washington's case, the district court in *Tanner* denied relief because it concluded that Rule 4(a)(1)'s time limit is jurisdictional and that granting relief under Rule 60(b) would impermissibly circumvent the rule's jurisdictional limits. *See id.* at 437–38.

The Sixth Circuit reversed. In doing so, the court recognized that Rule 60(b) dates back to the earliest promulgation of the Federal Rules, that the rule "is simply the recitation of pre-existing judicial power," *id*. at 438 (quoting

*Plaut*, 514 U.S. at 234–35), and that the amendments to the Federal Rules have limited this authority only where the reason for a late filing is lack of notice of judgment, *see id.* at 441–43. The Sixth Circuit remanded Tanner's case with instructions to vacate and reenter judgment. *Id.* at 444. Its decision is consistent with the mandatory nature of the filing deadline in Rule 4(a)(1) and the relief we grant Washington today.

The dissent incorrectly states that only the Sixth Circuit is in accord with our decision. This misstates the law of other circuits. For example, the dissent relegates the Seventh Circuit's recent *Ramirez* decision to a footnote, selecting instead the Seventh Circuit's earlier case, *Bell v. Eastman Kodak Co.*, 214 F.3d 798 (7th Cir. 2000). *Bell* did not categorically hold that Rule 60(b) may not be used to restore appeal rights in non lack-of-notice cases. It simply decided that the basis for the Rule 60(b) motion in that case—one that should have been argued on direct appeal because it challenged the trial judge's interpretation of evidence—did not warrant Rule 60(b) relief, and that an appeal from the denial of such a motion is functionally an appeal from the underlying judgment itself. *See id.* at 800.

The dissent also relies on the Third Circuit's decision in *West v. Keve*, 721 F.2d 91 (3d Cir. 1983). But *West* does not stand for the broad proposition that using Rule 60(b) to restore appeal rights is inconsistent with § 2107. Indeed, when the Third Circuit later "reaffirm[ed] *West*," it acknowledged "exceptional circumstances that justify relief under Rule 60(b) outside the time constraints of Rule 4(a)(5)" for the purpose of preserving appeal rights. *Burkett v. Cunningham*, 826 F.2d 1208, 1217 (3d Cir. 1987), *abrogated on other grounds by Betterman v. Montana*, 136 S. Ct. 1609

(2016). By pointing to factually distinguishable cases from other circuits, the dissent misses the broader point that there is a solid line of case law recognizing that district courts have the ability to restore appeal rights, in limited circumstances, by vacating and reentering judgment.

The only circuits we are aware of to suggest such relief is never available are the Fifth and Eleventh Circuits. *See Perez v. Stephens*, 745 F.3d 174, 176 (5th Cir. 2014); *Jackson v. Crosby*, 437 F.3d 1290, 1296 (11th Cir. 2006). *Perez* is nothing like Washington's case because it addressed a situation in which counsel affirmatively *decided* not to file an appeal, rather than a situation in which external circumstances prevented an appeal from being filed. 745 F.3d at 176. And in *Jackson*, the Eleventh Circuit had previously dismissed an appeal as untimely and viewed a later-filed Rule 60(b) motion as a request that the district court circumvent its earlier decision. 437 F.3d at 1296. The result we reach today is consistent with our own case law and case law from the Sixth and Seventh Circuits—decisions recognizing that this use of Rule 60(b) is not new, that it has been rarely but consistently used for decades, and that Congress did not eliminate it when it imposed other limitations in the years since the Supreme Court's decision in *Hill*.

The State argues that Rule 60(b) is unavailable to assist Washington because its plain language authorizes relief from "judgment," there is no infirmity in the judgment entered against Washington, and the problems in this case arose only after the judgment was entered. But Rule 60(b) does not require that the asserted grounds for relief exist before judgment is entered, and Rule 60(b)'s history and use make clear that it is not so limited. *See, e.g.*, Fed. R. Civ. P. 60

advisory committee's note to 1946 amendment (noting Rule 60(b) encompasses grounds for relief that existed before the rule's adoption); *see also Tanner*, 776 F.3d at 444 (recognizing Rule 60(b) relief may be appropriate for grounds arising after judgment was entered); *Mackey*, 682 F.3d at 1254 (same); *Burkett*, 826 F.2d at 1217 (same); *Wilson*, 725 F.2d at 258 (same); *Rodgers*, 722 F.2d at 460 (same); *Hensley*, 651 F.2d at 227 (same); *Mizell*, 586 F.2d at 944 n.2 (same).

The State also argues that we lack jurisdiction to hear Washington's appeal because, in 28 U.S.C. § 2107(c), Congress specifically limited the amount of time by which district courts can extend the period for filing NOAs. The State and the dissent rely heavily on *Bowles v. Russell*, 551 U.S. 205. There, the district court granted a Rule 4(a)(6) motion to reopen the time to file an appeal, but it inexplicably authorized three more days than the rule allows. *Id.* at 207. The Supreme Court noted the "mandatory and jurisdictional" nature of Rule 4(a) deadlines and concluded that the court of appeals lacked jurisdiction to hear an appeal filed before the expiration of the court-imposed deadline, but after the expiration of the period allowed by the rule. *Id.* at 209–10, 213–15. The Court reiterated that federal courts have "no authority to create equitable exceptions to jurisdictional requirements." *Id.* at 214.[7]

---

[7] The D.C. Circuit cited *Bowles* when it ruled that the district court lacked authority to provide Rule 60(b) relief "to circumvent the 180-day deadline of Appellate Rule 4(a)(6)," even in particularly compelling circumstances. *See In re Sealed Case*, 624 F.3d 482, 489 (D.C. Cir. 2010) (affirming denial of Rule 60(b) motion in a lack-of-notice case where appellant was not allowed to review a sealed docket despite written and oral inquiries to the clerk of the court). *In re Sealed Case* was a

We are not persuaded that *Bowles* dictates the outcome of Washington's appeal. *Bowles* did not address Rule 60(b) and did not purport to announce a new principle of law. *Bowles* described as "long held" the principle that appeal deadlines are mandatory and jurisdictional, *id.* at 209, and it did nothing to call into question the similarly "long held" district court authority under Rule 60(b).[8] *Id.* at 205. In fact, *Bowles* relied on *Browder v. Director, Department of Corrections*, 434 U.S. 257 (1978), a case that supports our decision. *Bowles*, 551 U.S. at 209–10 (citing *Browder* for the proposition that Rule 4(a) is jurisdictional). *Browder* was a habeas case in which the state respondent filed an untimely motion for an evidentiary hearing *after* the district court granted habeas relief. *See* 434 U.S. at 260–61. The Supreme Court concluded that the circuit court lacked jurisdiction because the untimely motion for an evidentiary hearing did not toll Rule 4(a)'s limit on the time to appeal. *See id.* at 264–65, 271–72. Critically, the State argued that the motion it filed in the district court was not based on Rule 60(b). *Id.* at 263.

---

particularly harsh result, but as we recognized in *In re Stein*, there does not appear to be any other avenue of relief in pure lack-of-notice cases.

[8] The dissent argues that by relying on Rule 60(b), the majority impermissibly circumvents the § 2107 time limits governing appeals. But under the dissent's view, many other types of Rule 60(b) motions would also "circumvent" those statutory limits. For example, a party may appeal a district court's judgment after the court rules on a timely post-judgment motion, such as a Rule 60(b) motion, even if the court waits months before ruling, and even if the court denies the motion. Such an appeal would be filed more than "30 days after entry of the judgment or order appealed from," Fed. R. App. P. 4(a)(1)(A), and it would not be subject to an extension under Rule 4(a)(5) or 4(a)(6). Of course, Rule 4(a)(4) tolls the time to appeal in such cases, but Rule 4(a)(4) has the same statutory footing as Rule 60(b).

Justice Blackmun wrote separately to concur in the judgment, joined by Justice Rehnquist. The concurrence explained that if the state had not "disavowed any reliance on Rule 60(b)," its motion likely could have been considered a motion under Rule 60(b)(1) or 60(b)(6). *See id.* at 274 (Blackmun, J., concurring). The concurrence observed that, had this been the case, an order from the district court reinstating its judgment would have started a new appeal period and respondent's NOA would have been timely. *Id.* at 272. Justice Blackmun saw "no obligation on [the] Court's part to attempt to rescue respondent's case on a Rule 60(b) basis" because the respondent insisted that it had not relied on Rule 60(b) in the trial court. *Id.* at 274.

The core principle from *Bowles* and *Browder*—that federal courts lack equitable authority to extend Rule 4(a)'s jurisdictional deadlines—is the same principle recognized in *Hill*. *See Hill*, 320 U.S. at 523 ("It goes without saying that the District Court could not extend the period [to appeal] fixed by Rule . . . ."). But *Hill* identified a second principle that does no violence to the first: federal court authority to relieve parties from judgment, now vested in Rule 60(b), includes the authority to vacate and reenter the judgment in extraordinary circumstances to restore the thirty-day opportunity to appeal. *See id.* at 523–24.

For decades, courts have sparingly but consistently exercised their authority under Rule 60(b) to restore appeal rights. Neither Congress nor the Supreme Court has seen fit to limit this authority except in lack-of-notice cases.

**B. Washington is entitled to relief under Rule 60(b)(1).**

The district court ruled that Washington's case did not warrant relief under Rule 60(b)(1) because he did "not demonstrate[] that he acted diligently in discovering the untimely filing" and because Washington failed to make "any effort to confirm the timeliness of his NOA until notified by the Ninth Circuit."

Rule 60(b)(1) authorizes relief from judgment for "mistake, inadvertence, surprise, or excusable neglect." On appeal, Washington relies on mistake and excusable neglect. In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court explained that excusable neglect under Rule 60(b)(1) applies when a party's failure to file on time is within "his or her control." *Id.* at 394. Motions for relief from judgment under Rule 60(b)(1) must be filed within one year from the entry of judgment and they must satisfy the four-factor test the Supreme Court established in *Pioneer*. The test considers: (1) the danger of prejudice to the non-moving party; (2) the length of the filing delay and its potential impact on the proceedings; (3) the reason for the filing delay; and (4) whether the moving party acted in good faith. *Id.* at 395; *see also Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381–82 (9th Cir. 1997). A district court must fully consider these factors in every case; we have explicitly rejected per se rules for determining whether a mistake is excusable. *See Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (en banc).

In cases decided before Rule 4(a)(6) was adopted, we required parties to show diligence before invoking Rule 60(b)(1) for the purpose of restoring the opportunity to appeal. *See Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983). *Rodgers* was a lack-of-notice case, but we see no reason to remove this requirement for parties like Washington who seek relief for reasons other than lack of notice. *See Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir. 1993) (applying *Rodgers* to a non lack-of-notice case). In addition—consistent with the Supreme Court's emphasis in *Pioneer* that "all relevant circumstances surrounding" the parties' failure to make a timely filing must be considered, 507 U.S. at 395—we consider the stakes at issue. Here, the stakes are extraordinarily high because Washington faces a death sentence.

Before applying the *Pioneer* test, we note that while Washington's initial calendaring error deprived him of the right to appeal within Rule 4(a)(1)'s time limit, it was the separate failure to realize that his appeal was late—and that he needed to seek a Rule 4(a)(5) extension—that ultimately caused Washington's appeal to be dismissed. The district court recognized this; its order denying Washington's motion for Rule 60(b) relief focused on Washington's failure to discover his calendaring error. The court implicitly ruled that the failure to catch the first error in time to seek a Rule 4(a)(5) extension was not excusable neglect. Under the circumstances of this case, application of the *Pioneer* test compels a different outcome.

The first *Pioneer* factor favors relief. The State has not argued that it would be prejudiced if Washington's habeas appeal is heard on the merits. Nor could it; the State has been on notice of Washington's intent to appeal since one business

day after the initial Rule 4(a)(5) deadline.  Second, the length of the delay and its potential impact on the proceedings also favors granting relief: even considering the time required to resolve the Rule 60(b) motion, reentering judgment so that Washington's appeal could move forward would have added only an insignificant amount of time in the context of this case.    Third, the reason for the initial late filing is uncontested.  Washington's lawyers simply miscalculated the date the NOA was due and calendared it one day too late.[9] Washington's lawyers did not catch their initial filing error because, after the NOA was filed, nothing prompted them to recalculate the due date.  There were no filings before the appellate court's order to show cause that should have prompted Washington or his lawyers to recalculate Rule 4(a)(1)'s filing deadline, and the State does not point to any event or other communication from the court or between the parties that should have put Washington on notice of the error.  The final *Pioneer* factor is whether the moving party acted in good faith.    Here, there is no suggestion that Washington's lawyers missed the 4(a)(5) window in bad faith or to gain advantage, and we have said that where other factors counsel relief, a calendaring mistake and related failure to catch that mistake is no bar to Rule 60(b)(1) relief. *See Ahanchian*, 624 F.3d at 1262.

---

[9] We have affirmed orders granting Rule 4(a)(5) relief for negligent calendaring errors.  *See, e.g.*, *Pincay*, 389 F.3d at 860 (paralegal read Rule 4(a)(1) as permitting 60 days to appeal, the time allowed when the government is a party to the case, even though the government was not a party); *Marx v. Loral Corp.*, 87 F.3d 1049, 1053–54 (9th Cir. 1996) (appeal deadline docketed a day late because of failure to realize August contains thirty-one days), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).

As for the district court's concern that Washington's lawyers were not diligent in recognizing their mistake, even daily monitoring of the docket would not have revealed that Washington's NOA was late.  Washington filed his NOA and request for a COA on July 11, 2005.  No other entries appeared on the district court docket until the district court's September 30 ruling on Washington's motion for a COA. We do not require lawyers to spontaneously recalculate Rule 4(a)'s filing deadlines after they file a NOA when there is no suggestion from the court or the docket that the NOA was late.  Rule 4 itself does not demand perfection—its drafters created a grace period in Rule 4(a)(5) precisely because mistakes happen.  Washington's lawyers are responsible for the initial late filing, but we cannot say they lacked diligence for *failing to detect* their late filing in time to seek an extension.   The district court abused its discretion in concluding otherwise.

Granting Washington relief would have had only a negligible effect on the proceedings, but denying relief eliminated any federal appellate review of the habeas petition in this capital case.   This tremendous disparity, in combination with consideration of the *Pioneer* factors, amply justified relief from judgment under Rule 60(b)(1).

### C.  In the Alternative, Washington is entitled to relief under Rule 60(b)(6).

If relief from judgment is not available under Rule 60(b)(1)–(5), Rule 60(b)(6) authorizes the district court to grant relief from judgment for "any other reason that justifies relief."  To justify relief under Rule 60(b)(6), a party must show external "'extraordinary circumstances' suggesting that the party is faultless in the delay."  *Pioneer*, 507 U.S. at 393.

The district court denied Washington's Rule 60(b)(6) motion because it concluded that the motion was "not grounded in external, extraordinary circumstances not otherwise addressed by Rule 60(b)(1)–(5)."

Our review of the record in this case persuades us that external circumstances did prevent Washington from discovering that his appeal was late, and from seeking an extension of time before Rule 4(a)(5)'s grace period expired. The dissent does not acknowledge it, but the record is unique in its clarity on this point.[10]

When Washington filed his NOA in 2005, Federal Rule of Appellate Procedure 3(d) required the district court clerk to "promptly send a copy of the notice of appeal" to the appellate clerk. The district clerk's office did not comply with this rule. Instead, the clerk waited over two and a half months, until the district court issued the COA, before sending Washington's NOA to the appellate court. The dissent protests that Rule 3(d) "does not specify a time within which the district court must act," but the rule did require that the NOA be forwarded promptly, and we cannot conceive of a definition in which a nearly three-month delay qualifies as "prompt." Nor can the few courts that have considered the question. *See, e.g., Yadav v. Charles Schwab & Co., Inc.*, 935 F.2d 540, 541 (2d Cir. 1991) (district court clerk violated

---

[10] The State argues that the only external circumstances that are relevant to Rule 60(b)(6) are those that prevent the *initial* filing of an appeal in compliance with Rule 4(a)(1), not those that prevent a petitioner from realizing that the appeal was untimely in time to seek a Rule 4(a)(5) extension. We see nothing to support this distinction. The principle from *Hill* that district court authority to provide relief from judgment includes the authority to vacate and reenter judgment to restore appeal rights applies equally to Rule 4(a)(5) and Rule 4(a)(1).

Rule 3(d) by failing to forward NOA to the court of appeals for nearly three months). The record does not reveal why the district court did not comply with Rule 3(d). The clerk may have thought that it was sufficient to comply with Federal Rule of Appellate Procedure 22(b)(1), which at the time required the clerk to "send the certificate [of appealability] . . . to the court of appeals *with the notice of appeal*." Fed. R. App. P. 22(b)(1) (1999) (emphasis added). Whatever the clerk's reason, Rule 22(b)(1) did not render Rule 3(d) a nullity; the clerk was required to comply with Rule 3(d) and also with Rule 22(b)(1).

These two rules served different functions in a coordinated scheme: Rule 22(b) facilitated the administrative transfer of habeas cases from the district court to the appellate court. Forwarded together, the NOA and COA gave the appellate clerk notice of the transfer of jurisdiction and of the issues presented for appeal. *See generally* 28 U.S.C. § 2253; Fed. R. App. P. 4. Rule 3(d) served an entirely different purpose. It was intended to give the court of appeals "increased practical control over the early steps in the appeal." Fed. R. App. P. 3(d) advisory committee's note to 1979 amendment.

The dissent questions how it could be that the rules may have required the district clerk to forward the NOA twice in situations like this one, where there was a delay between the entry of judgment and a ruling on the motion for a COA. This requirement, the dissent claims, "makes no sense." But it makes perfect sense. It was the district court's entry of judgment, not its ruling on a COA, that started the clock on Rule 4(a)'s deadlines. *See* Fed. R. App. P. 4(a)(1)(A). Once the clock began ticking, Rule 3(d)'s "prompt" requirement ensured the appellate clerk received the NOA in time to

identify, and permit the parties to cure, jurisdictional defects before Rule 4(a)(5)'s grace period expired.

The Second Circuit recognized as much in *Yadav*, one of the few published opinions addressing Rule 3(d). *See* 935 F.2d at 541. The plaintiffs in *Yadav* filed a premature NOA and failed to renew their filing after the district court ruled on their motion for reconsideration. This rendered their appeal untimely under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), *superseded in part by* Fed. R. App. P. 4(a)(4)(B)(i), 1993 amendments. The Second Circuit excused the failure to refile because the district clerk failed to promptly forward the premature NOA to the appellate clerk, and therefore "omitted an important step in the appellate process." *Yadav*, 935 F.2d at 541–42. There, like here, "if . . . the notice had been promptly forwarded to this Court, we could have promptly dismissed the appeal at a time when the appellants would still have had 30 days" to cure their jurisdictional defect. *Id.* at 542. The answer to the dissent's question is apparent when it is remembered that any defects in a NOA affect the jurisdiction of the appellate court, not the district court, hence Rule 3(d)'s sensible requirement that the NOA be forwarded to the appellate clerk *promptly*. *See id.* at 541–42.

Washington's appeal, like the Yadavs', illustrates why Rule 3(d) directs that NOAs must be forwarded promptly. One week after receiving the NOA, the appellate clerk issued an order to show cause why Washington's appeal should not be dismissed as untimely. Six days after that, Washington filed his Rule 60(b) motion. The record does not require that we speculate about what would have happened if Washington's NOA had been forwarded without delay: if the NOA had been forwarded promptly, Washington would have

received notice with two weeks remaining in Rule 4(a)(5)'s grace period, he would have had ample time to request an extension, and it cannot be doubted that he would have done so. We know this because it took just six days for Washington's lawyers to respond once they received the order to show cause. The district court abused its discretion by not crediting the combination of the court's failure to promptly forward the NOA to the appellate clerk and the time it took to rule on the COA as external factors that foreclosed Washington's opportunity to seek an extension of time.[11]

## II. We Do Not Reach Washington's Alternative Arguments.

Washington's NOA and COA were docketed just after Rule 4(a)(5)'s thirty-day grace period began. Washington argues on appeal that his motion for a COA may be construed as a request for an extension of time under Rule 4(a)(5); if granted, this request would render his appeal timely. Well-reasoned case law supports the proposition that "[a]ny submission signed by a party that may fairly be read as a request to the district court to . . . permit a late appeal should

---

[11] The sequence of events that thwarted Washington's appeal cannot be repeated. The Committee amended Rule 22 in 2009 and the current rule directs that NOAs be forwarded even if no COA has issued: "[w]hen an applicant has filed a notice of appeal, the district clerk must transmit the record to the court of appeals; *if* the district judge has issued a [COA], the district clerk must include in this transmission the certificate." Fed. R. App. P. 22 advisory committee's note to 2009 amendment (emphasis added). Thus, even if court staff mistakenly consult Rule 22 in isolation, it is plain that the NOA must be forwarded without waiting for the COA. Also in 2009, the Committee added a new rule that requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases.

suffice" as a motion for additional time under Rule 4(a)(5). *Campos v. LeFevre*, 825 F.2d 671, 676 (2d Cir. 1987). This is consistent with the Supreme Court's recent statements that it is "a good thing . . . that courts sometimes construe one kind of filing as another" to "identify[] a route to relief." *See Mata v. Lynch*, 135 S. Ct. 2150, 2156 (2015). But Washington never raised this argument before the district court despite his opportunity to do so.[12]

Washington also adopts an argument advanced by amicus, that the order denying his § 2254 habeas petition did not become final and appealable until the district court ruled on his motion for a COA. *See* 28 U.S.C. § 2253(c) (a COA is a prerequisite to appeal of an order denying a § 2254 petition). As far as we are aware, this argument is one of first impression. Because we conclude that the circumstances of Washington's case entitle him to relief under well-established authority applying Rule 60(b)(1) or, alternatively, 60(b)(6), we do not reach Washington's alternative arguments.

## CONCLUSION

Having traced the history and interpretation of Rule 60(b), we conclude that when Congress adopted the Federal Rules, it entrusted the courts with the essential task of identifying the rare cases that warrant reentry of judgment for purposes of restoring the right to appeal. Subsequent amendments

---

[12] Washington filed two Rule 60(b) motions with the district court after he learned his NOA was late. A three-judge panel of our court vacated the district court's order denying Washington's first 60(b) motion because the case had not been remanded and the district court lacked jurisdiction. The panel then issued a limited remand to permit Washington to file a second Rule 60(b) motion. Neither motion argued that his motion for a COA should be construed as a motion for a Rule 4(a)(5) extension.

have not abrogated that authority and district courts have discharged this obligation with care. Of the thousands of judgments entered by district courts each year, only a handful have been found to warrant this type of relief. We conclude that Washington's is one of them.

We reverse the district court's denial of Washington's motion for relief from judgment pursuant to Rule 60(b) in appeal No. 07-15536. On limited remand, the district court shall vacate and reenter its judgment denying Washington's petition for writ of habeas corpus, *nunc pro tunc*, June 9, 2005. After the district court reenters its judgment, Washington's appeal from the denial of his § 2254 petition may proceed in appeal No. 05-99009. We do not reach the remainder of Washington's arguments. No new briefing is authorized by this decision.

**REVERSED AND REMANDED.**

---

BYBEE, Circuit Judge, with whom CALLAHAN, BEA, IKUTA, and WATFORD, Circuit Judges, join, dissenting:

I take no pleasure in writing this dissent. Washington's counsel filed his notice of appeal one day late. The office of the Arizona Public Defender is well known to this court and enjoys an outstanding reputation. Washington's lead counsel has earned the respect of this court; he is an experienced and conscientious attorney, an expert in death penalty appeals and habeas petitions. For anyone who has litigated and has known the anxiety of counting and then recounting the days towards deadlines, this is a nightmare.

For at least the last fourteen years, the Supreme Court has been telling us that we have failed to appreciate the difference between jurisdictional rules and claim-processing rules. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–36 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–63 (2010); *Union Pac. R.R. Co. v. Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81–82 (2009); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510–12 (2006); *Eberhart v. United States*, 546 U.S. 12, 15–16 (2005) (per curiam); *Kontrick v. Ryan*, 540 U.S. 443, 452–56 (2004); *United States v. Cotton*, 535 U.S. 625, 630–31 (2002). The Court has chided itself that, "Courts—including this Court—have sometimes mischaracterized claim-processing rules . . . as jurisdictional limitations." *Reed Elsevier*, 559 U.S. at 161. Accordingly, "[i]n light of the important distinctions between jurisdictional prescriptions and claim-processing rules," the Court has "encouraged federal courts and litigants to 'facilitat[e] clarity by using the term "jurisdictional" only when it is apposite.'" *Id.* (quoting *Kontrick*, 540 U.S. at 455). We have responded to the Court's prompting by carefully considering whether cases must be dismissed for jurisdictional reasons or for other, non-jurisdictional reasons. *See, e.g.*, *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1051 (9th Cir. 2013) (en banc); *Irigoyen-Briones v. Holder*, 644 F.3d 943, 947–49 (9th Cir. 2011); *United States v. Jacobo Castillo*, 496 F.3d 947, 951–54 (9th Cir. 2007) (en banc); *United States v. Sadler*, 480 F.3d 932, 939–40 (9th Cir. 2007).

Rules that are part of the process of adjudicating claims and rules that constrain our jurisdiction are very different kinds of rules. From the perspective of the parties, it may not make much difference if the result is an adverse judgment; after all, a party doesn't usually care if the case is dismissed

under Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6), because the effective result is the same. But the application of jurisdictional rules versus claim-processing rules is of great consequence to the federal courts. Claim-processing rules go to the way in which we will conduct our ordinary business. Congress has granted us power, through the Rules Enabling Act, to promulgate rules of procedure in our courts. *See* 28 U.S.C. § 2072(a). Such rules bring order to the process by which we resolve disputes. Such rules must be respected and enforced, but these rules, after all, are our rules and we feel a freer hand in the flexible application of those rules. Such rules may be waived or forfeited. *See Union Pac. R.R. Co.*, 558 U.S. at 81–82; *Kontrick*, 540 U.S. at 456.

Jurisdictional rules, by contrast, go to our "power to hear a case" and "can never be forfeited or waived." *Arbaugh*, 546 U.S. at 514 (quoting *Cotton*, 535 U.S. at 630). They are grounded in Article III of the Constitution, the organic provision that creates the federal courts and locates those courts within a system of separated powers. Article III vests the "judicial Power of the United States" in "one Supreme Court, and such inferior courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. The "judicial Power" is not a self-defining term, but

> shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction; —to Controversies to

which the United States shall be Party; —to Controversies between two or more States; —between Citizens of different states,— [and] between Citizens of the same State claiming Land under Grants of different States.

U.S. Const. art. III, § 2, cl. 1, as amended by amend. XI.  This section contains the outer limits of our jurisdiction.  *See Ex Parte McCardle*, 74 U.S. 506, 513 (1868) ("The principle that the affirmation of appellate jurisdiction implies the negation of all such jurisdiction not affirmed having been thus established, it was an almost necessary consequence that acts of Congress, providing for the exercise of jurisdiction, should come to be spoken of as acts granting jurisdiction, and not as acts making exceptions to the constitutional grant of it."); *Durousseau v. United States*, 10 U.S. 307, 313–14 (1810) ("Had the judicial act created the supreme court, without defining or limiting its jurisdiction, it must have been considered as possessing all the jurisdiction which the constitution assigns to it. . . . [The appellate powers of this Court] are limited and regulated by the judicial and by such other acts as have been passed on the subject.").  Other than cases affecting ambassadors, ministers, and consuls, Congress controls the Supreme Court's jurisdiction.  U.S. Const. art. III, § 2, cl. 2 ("[T]he supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.").  Because Congress has the power to create lower federal courts under Article III, Section 1, Congress also has the power to regulate the jurisdiction of the lower courts, including this one.  U.S. const. art. III, § 1; *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850).  We possess only such jurisdiction as Congress has granted by statute, and no more.

*Sheldon*, 49 U.S. at 449 ("Courts created by statute can have no jurisdiction but such as the statute confers."); *United States v. Hudson*, 11 U.S. 32, 33 (1812) ("All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer."); *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1019 (9th Cir. 2012). These jurisdictional limitations may not be waived but must be observed with exactness, lest we seize power we have no right to exercise. Because we are a "government of laws and not of men," Mass. Const. pt. I, art. XXX, sometimes, as judges in hard cases, we must decline to exercise power even when it is contrary to our best inclinations as people. But it is the nature of a government of laws that we must resist our inclinations especially when it contravenes the power entrusted to us.

This is one of those hard cases.

I

Petitioner Theodore Washington's petition for a writ of habeas corpus was denied by the district court. He sought to appeal, but his notice of appeal was filed one business day late due to a paralegal's error in calculating the filing deadline. By the time this court issued an order to show cause as to why the appeal should not be dismissed as untimely, Washington had missed the thirty-day grace period provided under Federal Rule of Appellate Procedure (FRAP) 4(a)(5) in which to file a motion for extension of time to file an appeal. Rule 4(a) codifies the jurisdictional time limits on the right to appeal imposed by Congress in 28 U.S.C. § 2107. The statute provides:

> Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.

28 U.S.C. § 2107(a). In turn, the federal courts implemented this statute in FRAP 4(a): "In a civil case, except as provided in [this Rule], the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a).

Congress provided an exception to § 2107(a) in § 2107(c): "The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. § 2107(c).[1] Again, the federal courts have implemented this

---

[1] Section 2107(c) also provides as follows:

In addition, if the district court finds—

(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

(2) that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from

provision in FRAP 4(a)(5) and (6).**²**  *See Obaydullah v.*

---

the date of entry of the order reopening the time for appeal.

28 U.S.C. § 2107(c).

**²** Those rules provide, in relevant part:

(5) Motion for Extension of Time.

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion if filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause

. . . .

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) Reopening the Time to File an Appeal.  The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

*Obama*, 688 F.3d 784, 789 (D.C. Cir. 2012) (per curiam). The rule provides that a party must file a notice of appeal within thirty days after the entry of judgment, with only two narrow exceptions: (1) where a party can demonstrate "excusable neglect," the party may file a motion for an extension of time up to thirty days after the date to timely appeal, Fed. R. App. P. 4(a)(5); and (2) where a party fails to receive notice of the judgment, the party may move to reopen the time to file within 180 days after the entry of judgment, or within fourteen days after receiving notice of the judgment, whichever is earlier, Fed. R. App. P. 4(a)(6).

Had Washington's attorney realized his error earlier, he could have sought an extension of time from the district court under Rule 4(a)(5) and rectified the untimely filing. However, having missed the time in which to seek an extension, Washington filed a motion in the district court under Federal Rule of Civil Procedure 60(b), asking the district court to vacate and reenter its original judgment denying his habeas petition. The intended effect of this procedure was to restart the thirty-day period in which to timely file an appeal—Washington was not, in fact, seeking to amend or suspend any substantive part of the district court's order denying his petition. The district court denied the motion, finding that Rule 60(b) could not be used solely for the purpose of restarting the time to file an appeal. I agree, and conclude that this court therefore lacks jurisdiction

---

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier;
. . . .

Fed. R. App. P. 4(a)(5), (6).

to entertain Washington's untimely appeal.  The U.S. Supreme Court was clear in *Bowles v. Russell*, 551 U.S. 205 (2007), that the FRAP timely filing requirements are "mandatory and jurisdictional," *id.* at 209 (quotations omitted), barring courts from creating equitable exceptions that would allow an appeal where a party fails to comply with these requirements, however "extraordinary" the circumstances that precipitated the missed deadline.  Today, the majority chooses to ignore that holding by shoehorning an essentially equitable exception to the jurisdictional requirements of Rule 4(a) into Rule 60(b).  Our jurisdiction extends no farther than Congress has granted by statute, *Sheldon*, 49 U.S. at 449, which in this case means the outer limits of § 2107.  That statute does not admit the exception created by the majority.

## A

In *Bowles*, the Supreme Court held that the "timely filing of a notice of appeal in a civil case is a jurisdictional requirement," because the Rule 4(a) filing requirements are statutorily based in 28 U.S.C. § 2107.  *Bowles*, 551 U.S. at 214.  Likewise, the *exceptions* to the Rule 4(a) timely filing requirements—Rules 4(a)(5) and 4(a)(6)—are based in 28 U.S.C. § 2107(c).  *Bowles* dealt specifically with Rule 4(a)(6) and an equitable exception known as the "unique circumstances" doctrine.  *Id.* at 213.  Bowles failed to file a timely appeal from the district court's denial of his petition for a writ of habeas corpus.  He sought, as permitted by Rule 4(a)(6), to reopen the period for filing his appeal, which would have given him an additional fourteen days. Inexplicably, the district court gave him seventeen days, and he filed within that period, but after the fourteen-day period had expired.  *Id.* at 207.  The Court held that Bowles' appeal

was late and must be dismissed because courts "[have] no authority to create equitable exceptions to jurisdictional requirements" in order to excuse an untimely filing. *Id.* at 214.

The result in *Bowles* seemed particularly harsh given that the untimely filing period was expressly authorized by district court order. The Supreme Court still denied relief, noting that "[i]f rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits." *Id.* But in the end, the Supreme Court "lack[ed] present authority to make the exception petitioner seeks." *Id.* at 215. The issue was one of judicial power, not judicial will.

Unlike *Bowles*, the case before us today deals with the thirty-day grace period under Rule 4(a)(5) rather than the 180-day time limit in Rule 4(a)(6). The reasoning of *Bowles*, however, clearly applies, because the thirty-day grace period provided in Rule 4(a)(5) also derives from 28 U.S.C.§ 2107(c). If equitable exceptions cannot be made to Rule 4(a)(6) because Rule 4(a)(6) is based in statute and therefore jurisdictional, I see no principled basis for distinguishing Rule 4(a)(5), and the majority offers none. Moreover, the Court in *Bowles* spoke broadly about the Rule 4(a) timing requirements and exceptions—it did not base its reasoning off any particular distinguishing feature of Rule 4(a)(6) such that the decision should not be read to apply to Rule 4(a)(5) as well. The lesson to be drawn from *Bowles* is that when Congress provides timely filing requirements, courts are meant to stick to them, even where the resulting consequences are harsh, as they admittedly are here.

B

The majority argues that its decision today does no violence to the principle announced in *Bowles* because its decision here rests on Federal Rule of Civil Procedure 60(b), and Rule 60(b) gives district courts the authority to relieve parties from judgment. Here, the majority concludes that this rule may be used not to amend or seek relief from a district court judgment, as the rule is intended to be used, but to seek relief only from the *date* of that judgment. Maj. Op. at 23. Allowing the district court to vacate and reenter the exact same judgment in order to enlarge the time to file an appeal constitutes a misuse of Rule 60(b) and violates *Bowles* by circumventing the statutory time frame governing appeals.[3]

Unlike Rules 4(a)(5) and 4(a)(6), which are based in statute, Rule 60(b) is a court-promulgated rule that gives district courts the authority to provide relief from a final judgment if a motion is filed "within a reasonable time" and "not more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). Relief may be afforded, among other reasons, for mistake, excusable neglect, or extraordinary

---

[3] The majority notes that Rule 4(a)(4) tolls the time to appeal where a Rule 60(b) motion has been filed, and suggests that Rule 60(b) is an embarrassment to my theory. Maj. Op. at 22 n.8. Where a Rule 60(b) motion is used properly, it seeks to substantively amend the judgment, thus rendering the original judgment un-final. In that case, there is no longer anything to appeal from until the amended judgment is entered. Rule 4(a)(4) simply recognizes this, and thus presents no conflict with Rule 4(a)(5) or § 2107. This is also why a Rule 60(b) motion may be filed up to a year after the entry of judgment without running afoul of the time to appeal. But as I noted above, Washington in this case was not actually seeking to alter or amend the judgment. He just wanted more time to file an appeal.

circumstances that justify relief. Fed. R. Civ. P. 60(b)(1), (6); *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (holding that relief under Rule 60(b)(6) requires a party to show "'extraordinary circumstances' suggesting that the party is faultless in the delay"); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). Under the majority's reading, Rule 60(b) subsumes Rule 4(a): if Rule 60(b) provides an avenue of relief from an untimely appeal, then parties actually have up to a year in which to seek an appeal, not thirty days as provided by Rule 4(a)(5). Such a reading not only contradicts Rule 4(a), but, more importantly, 28 U.S.C. § 2107, and the contradiction is not easily resolved: Rule 60(b) is a claim-processing rule, while Rule 4(a) is largely jurisdictional. But rather than interpret these rules to avoid such a conflict, i.e., by concluding that Rule 60(b) simply does not provide relief from an untimely filing of a notice of appeal, the majority seeks to avoid what it perceives as an unfair result and ignores the fact that its holding allows Rule 60(b) to be used to circumvent the jurisdictional time limits of Rule 4(a).[4]

---

[4] The majority states that I am "implied[ly] asserti[ng] that the Federal Rules of Appellate Procedure have a superior statutory foundation than that of the Federal Rules of Civil Procedure." Maj. Op. at 12–13 n.2. No. What I have said, and it bears repeating, is that the *time limits* in *FRAP 4(a)(5)* have a specific statutory basis, 28 U.S.C. § 2107, while *Rule 60(b)* has no such statutory corollary. The majority seems to suggest that because both the FRAP and the Rules of Civil Procedure were promulgated under the Rules Enabling Act, *see* 28 U.S.C. § 2072, the two rules have the same statutory basis, and therefore Rule 60(b) can be used to circumvent Rule 4(a). Maj. Op. at 12–13 n.2. The problem that the majority refuses to acknowledge is that its proposed use of Rule 60(b) circumvents not only Rule 4(a)(5), but § 2107, a separate statute. No court has *ever* held that the Rules Enabling Act gives courts the power to promulgate rules to overturn other acts of Congress and expand the jurisdictional limits that Congress has set.

The majority writes that, "[f]or decades, courts have sparingly but consistently exercised their authority under Rule 60(b) to restore appeal rights." Maj. Op. at 23. It appears to base its entire decision on the principle that Rule 60(b) gives district courts the general authority, based on historical practice, to revive lost appeal rights. The majority's historical account of this use of Rule 60(b), however, leaves a great deal to be desired. There was indeed an historical practice of using Rule 60(b) to restart the time to file an appeal in a very specific context: cases in which a party never received notice of the district court's final judgment, and so missed the time to file an appeal because the party was not aware that an appeal had become possible. In *Hill v. Hawes*, 320 U.S. 520 (1944), the Supreme Court appeared to depart from longstanding precedent when it held that the district court in that case had the authority to vacate and reenter its original judgment to restart the time to file an appeal where the clerk of the court had failed to serve notice of the judgment on the parties as required by Federal Rule of Civil Procedure 77(d). *Id.* at 523–24; *see also id.* at 525–26 (Stone, C.J., dissenting) (listing cases in which the Court had prohibited an extension of the time to file an appeal). The Court reasoned that, while Rule 60 did "not in terms apply to the situation," it was acceptable for the trial judge to provide relief "in the view that the petitioner relied upon the provisions of Rule 77(d) with respect to notice." *Id.* at 524.

The majority interprets *Hill* to stand for the much broader proposition that courts may use Rule 60(b) in *any* circumstance that a court deems "extraordinary" in order to

restart the time to file an appeal. Maj. Op. at 23.[5]  I see no such broad proposition in that case; rather, as I have said, the Court appeared to create a specific exception to the rule against extending the time to file an appeal where a party failed to receive notice of the judgment.  It is also worth noting that the *Hill* Court dealt with a court-promulgated rule setting the time to file an appeal, not a statute that conditioned jurisdiction on timely filing.  *Hill*, 320 U.S. at 521–23.  *See generally* Wright, Miller, et al., 16A Fed. Prac. & Proc. Juris. § 3950.3 (4th ed. 2016) (discussing the history of FRAP Rule 4).  There was, in fact, a statute setting a three-month statutory deadline for appeals at the time that case was

---

[5] The majority concludes that this case involves "extraordinary" circumstances and assures us that this is one of a "narrow band of cases," that our power will be used "sparingly," and that it is a "rare case[]," one of a "handful" of the thousands of cases decided each year.  Maj. Op. 10, 16, 23, 32–33.  There is really nothing extraordinary about attorneys miscalculating filing deadlines—even by one day.  It happens all the time. *See, e.g.*, *Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007); *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc); *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc) (death penalty case); *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588 (8th Cir. 2003); *Lattimore v. Dubois*, 311 F.3d 46 (1st Cir. 2002); *United States v. Marcello*, 212 F.3d 1005 (7th Cir. 2000); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000).  And there is no limiting principle if we allow this exception.

> If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline . . . Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.

*United States v. Locke*, 471 U.S. 84, 100–01 (1985).

decided. *See* 43 Stat. 936, 940. But the three-month *statutory* deadline was irrelevant in *Hill*, because the appeal, although late under the D.C. Circuit's twenty-day rule—which the Court concluded the circuit had the authority to set—had still been filed within the three-month deadline set by Congress. *Hill*, 320 U.S. at 521–22 (noting that the judgment was entered on May 7, 1940 and that the appeal was filed on June 14, 1940). The Court therefore had no need to address either the statute or any jurisdictional questions its circumvention might have raised. Furthermore, in examining the statutory deadline, the Court observed that the three-month provision did not even apply to the D.C. Circuit, because that court was governed by a separate statute. *Hill*, 320 U.S. at 522–23 ("[T]he statute conferring power on the [D.C.] Court of Appeals to set the time for appeal was not superseded by the legislation creating and defining the jurisdiction of circuit courts of appeals.").[6] Either way, the

---

[6] A bit of historical background is helpful in understanding the context here. At the time *Hill* was decided in 1944, the Court of Appeals of the District of Columbia—which would indeed become what we know as the D.C. Circuit—was not yet considered one of the federal circuit courts of appeal. In the Evarts Act of 1891, Congress separated the trial and appellate functions for most of the federal courts in the United States, creating our present system of federal district courts and the circuit courts of appeal. *See* Act of Mar. 3, 1891, ch. 517, 26 Stat. 826. It did not adopt this change for the courts in the District of Columbia, however, until two years later. With the Act of February 9, 1893, Congress kept the Supreme Court of the District of Columbia as a trial court, and created a new, three-member Court of Appeals of the District of Columbia to exercise appellate jurisdiction over the trial court. Act of Feb. 9, 1893, ch.74, § 7, 27 Stat. 434, 435–36. It did not become clear until 1933, however, that this trial court and the new three-judge Court of Appeals were even Article III courts, as opposed to Article I "legislative" courts. *See O'Donoghue v. United States*, 289 U.S. 516, 549, 551 (1933). And it was not until 1948—four years after *Hill*—that Congress designated D.C. as one of the eleven judicial circuits of the United States, and re-named the Court of

problem identified in *Bowles* with circumventing a *congressionally mandated* time frame was not an issue in *Hill.*

*Hill* is irrelevant for another reason: A similar exception has now been codified in § 2107. *See* 28 U.S.C. § 2107(c)(1) (providing relief for "a party entitled to notice of the entry of a judgment or order [who] did not receive such notice"). Section 2107 then limits the time within which relief can be granted to the party. If *Hill* once stood for anything relevant to this case, it has been superceded by statute. Indeed, *Hill* has also been superceded by rule. Federal Rule of Civil Procedure 77(d)(2) provides that "[l]ack of notice of the entry does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure 4(a)." This rule, which binds the district court, prohibits the powers exercised by the Court in *Hill.* The 1946 Advisory Notes to Rule 77 state that

> Rule 77(d) has been amended to avoid such situations as the one arising in *Hill v. Hawes*. . . . [T]he effect of the decision in *Hill v. Hawes* is to give the district court power, in its discretion and without time limit, . . . to vacate a judgment and reenter it for the

Appeals for the District of Columbia the United States Court of Appeals for the District of Columbia Circuit. Act of June 25, 1948, ch. 646, §§ 41, 45, 62 Stat. 869, 870–71; *see also* Susan Low Bloch & Ruth Bader Ginsburg, *Celebrating the 200th Anniversary of the Federal Courts of the District of Columbia*, 90 Geo. L.J. 549, 559–61 (2002); *see generally*, John G. Roberts, Jr., *What Makes the D.C. Circuit Different? A Historical View*, 92 Va. L. Rev. 375 (2006).

> purpose of reviving the right of appeal. This seriously affects the finality of judgments.

Fed. R. Civ. P. 77 Advisory Committee Notes.

What the majority has done is take *Hill*'s narrow exception and make it limitless. It takes the holding of *Hill*—which Congress has superceded by statute and which the federal courts have addressed by rule—and finds additional authority in that decision. In the process, it ignores § 2107, upends Rules 4 and 77, and overrules, sub silentio, our own prior, considered decisions. *See In re Stein*, 197 F.3d 421, 426 (9th Cir. 1997) ("Rule 4(a) and Rule 77(d) now form a tessellated scheme; they leave no gaps for Rule 60(b) to fill."). It is a daring and brazen move.

Nor have the lower courts, in the years since *Hill* was decided, interpreted that case as broadly as the majority does today. The majority cites few cases in support of the proposition that Rule 60(b) may be used to circumvent appellate filing periods that do *not* involve situations in which a party failed to receive notice of judgment, save two from the Sixth Circuit, *see Tanner v. Yukins*, 776 F.3d 434 (6th Cir. 2015); *Lewis v. Alexander*, 987 F.2d 392 (6th Cir. 1993), and two involving "attorney abandonment," which is not at issue here, *see Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015); *Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012). Maj. Op. at 16–19. Indeed, I have found no other cases in which courts have held that Rule 60(b) may be used to circumvent the time for filing an appeal where a party missed the filing deadline for reasons *other* than lack of notice of the lower court judgment or attorney abandonment—whether those reasons are mistake, neglect, or some other "extraordinary circumstance."

Several courts, in fact, held before *Bowles* that Rule 60(b) may *not* be used to circumvent timely filing deadlines in non-lack-of-notice cases. The Third, Fifth, Seventh, and Eleventh Circuits have all discussed at length why relief is not available under any provision of Rule 60(b) in order to restart the time to file an appeal. *See, e.g.*, *Jackson v. Crosby*, 437 F.3d 1290, 1296 (11th Cir. 2006) (per curiam); *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 111–12 (3d Cir. 2004) (citing *West v. Keve*, 721 F.2d 91 (3d Cir. 1983)); *Dunn v. Cockrell*, 302 F.3d 491, 492–94 (5th Cir. 2002) (per curiam); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800–02 (7th Cir. 2000).

As the Third Circuit pointed out in *West*, 721 F.2d at 96–97, Rule 4(a) is a specific rule of appellate procedure, one that is based on a statute which governs the time in which appeals must be taken, *see* 28 U.S.C. § 2107. Rule 60(b), on the other hand, is a court-promulgated general procedural rule that applies to the district courts, providing for relief from judgments. The Third Circuit concluded that under the general/specific canon of construction, Rule 4(a), not Rule 60(b), controls the time to appeal, because Rule 4(a) is specific to the timing of appeals. *Id.* The court concluded that this was so despite the "inequitable results that may flow from a strict application of the harsh time constraints in Rule 4(a)." *Id.* at 96. The court also pointed out that "to allow a party to rely on Rule 60(b) as an alternative to the time constraints of Rule 4(a) would have the substantive effect of nullifying the provisions of Rule 4(a)(5)." *Id.*[7]

---

[7] The majority cites the Third Circuit's decision in *Burkett v. Cunningham*, 826 F.2d 1208, 1217 (3d Cir. 1987), *abrogated on other grounds by Betterman v. Montana*, 136 S. Ct. 1609 (2016), for the proposition that "exceptional circumstances" may justify relief under Rule

The Fifth and Eleventh Circuits agreed for similar reasons. *See Dunn*, 302 F.3d at 492–93; *Jackson*, 437 F.3d at 1296.**⁸** The Fifth Circuit additionally noted that relief is limited under Rule 4(a)(5) to protect the finality of judgments, and that this is particularly important where, as here, "the movant neither complains of any denial of a full and fair hearing before the district court nor seeks by the ruling to have the district court alter its ruling, but rather asks only that the order be vacated and reentered." *Dunn*, 302 F.3d at 493 (quoting *United States v. O'Neil*, 709 F.2d 361, 373 (5th Cir. 1983)). In such a situation, where the Rule 60(b) motion "is avowedly being used only to extend the time for appeal," it "squarely collides with Rule 4(a)(5)," and therefore is impermissible. *Id.*

---

60(b) despite failure to comply with the Rule 4(a) timing requirements. Maj. Op. at 19–20. What the majority leaves out is that the "exceptional circumstances" to which the court referred is the fact that Burkett never received notice of the entry of the final order he was attempting to appeal from; the notice was sent to an incorrect address. *Burkett*, 826 F.2d at 1216–17. In other words, this is simply another lack-of-notice case. At the time, the exception in Rule 4(a)(6) specifically addressing lack-of-notice situations had not yet been added to Rule 4(a); hence, the Third Circuit was relying on the historical lack-of-notice exception discussed above.

**⁸** *Dunn* and *Jackson* were both capital habeas cases. Dunn's attorney filed his notice of appeal four days late. *Dunn*, 302 F.3d at 492. Jackson's attorney filed an untimely Rule 59(e) motion, which meant that it was inoperative to toll the filing period for a notice of appeal of the district court's denial of his habeas petition. Jackson didn't realize this until the Eleventh Circuit dismissed his initial appeal, at which point he sought relief in the district court under Rule 60(b) to restart the filing period. *Jackson*, 437 F.3d at 1292. Thus, we are not the only court that has had to address this issue in this freighted context.

The Eleventh and Seventh Circuits likewise touched on a similar issue, noting that the purpose of Rule 60(b) is to challenge an error made by the district court; therefore, using Rule 60(b) as a substitute for a timely appeal goes "outside the scope of the rule." *Bell*, 214 F.3d at 801–02; *see also Jackson*, 437 F.3d at 1296 ("Petitioner was not asking for relief from any order of the *district court*, but was instead attempting to resuscitate the time to file an appeal by asking the district court to circumvent an order from *this court* dismissing the appeal as untimely.").

Based on these cases alone, I would be reluctant to conclude that Rule 60(b) provides an avenue for relief in the situation we face here: not a lack-of-notice case, but a case in which the petitioner's attorney negligently failed to timely file. The weight of pre-*Bowles* case law does not appear to support such an extension of this practice. In fact it suggests the opposite: that, contrary to the majority's opinion, Rule 60(b) cannot be, and has not been, used in the manner the majority uses it in this case.[9]

---

[9] The majority argues briefly that the Supreme Court's decision in *Browder v. Director, Dep't of Corrections*, 434 U.S. 257 (1978), on which *Bowles* relied for the proposition that Rule 4(a) time limits are jurisdictional, *see Bowles*, 551 U.S. at 209–10, supports its decision today. Maj. Op. at 22. It does not. *Browder* reached the unremarkable conclusion that a post-judgment motion for a new evidentiary hearing in a habeas proceeding, which the Court construed as an untimely Rule 59 motion, could not be used to toll the time to file an appeal. *Id.* at 264–65, 271–72. The original judgment granting habeas was issued in October, and the district court agreed to hold the post-judgment evidentiary hearing in a December 8 order, but ultimately denied the state relief after holding the hearing in January, a decision from which the state then appealed. The Court found that the appeal was untimely because the untimely *motion* had not tolled the time to appeal. The concurrence, on which the majority relies, Maj. Op. at 23, merely pointed out that if the state's motion for the

But in light of *Bowles*, I fail to see how a claim-processing rule like Rule 60(b) can legitimately be used to avoid a jurisdictional, statutory filing requirement, and the majority has offered no explanation on this point. Post-*Bowles*, two circuits have addressed the interaction between the Supreme Court's decision and Rule 60(b). In *In re Sealed Case (Bowles)* (a different Bowles), the D.C. Circuit rejected the argument that Rule 60(b) could be used to circumvent the time limits of Rule 4(a)(6), which provides for a 180-day extension of the time to file an appeal where a party never received notice of the lower court judgment. 624 F.3d 482, 486–88 (D.C. Cir. 2010). The appellant in that case argued that Rule 60(b) is a "court-promulgated rule" in which time limits are not jurisdictional, and that it could be used to afford relief from the time limit imposed by Rule 4(a). The D.C. Circuit disagreed. It observed that "the [Supreme] Court has never held that a party could use a court-promulgated rule to circumvent the jurisdictional bar on limits for reopening the time to appeal enacted by Congress," and that allowing relief under Rule 60(b) would do just that. *Id.* at 486. Because "[t]he Court [in *Bowles*] spoke in unequivocal and uncompromising terms in stating that courts lacked power to

---

post-judgment evidentiary hearing were construed as a Rule 60(b) motion, the district court's December 8 order could have been construed as granting Rule 60(b) relief setting aside the original October judgment, because the district court clearly intended to reopen the judgment by holding the evidentiary hearing. *Browder*, 434 U.S. at 272–73 (Blackmun, J., concurring). Had the Court instead construed the district court's order in such a way, the state's appeal would then have been timely as an appeal from the *reentry* of judgment after the evidentiary hearing was held. *Id.* at 273. Nothing in this case suggests that the state could have moved under Rule 60(b) to vacate and reenter the judgment solely for the purpose of restarting the time to file an appeal, without seeking to alter the original judgment.

carve out equitable exceptions to jurisdictional statutory requirements. . . . it would be difficult to imagine that the Court would not also view the use of Rule 60(b)" to circumvent the Rule 4(a) filing requirements as "illegitimate." *Id.* at 486–87 (quoting *Bowles*, 551 U.S. at 214).

The Fifth Circuit agrees. In *Perez v. Stephens*, 745 F.3d 174, 178–81 (5th Cir. 2014), the court revisited its decision in *Dunn* in light of *Bowles*, and concluded that *Bowles* provided even stronger support for the conclusion that Rule 60(b) could not be used to circumvent the timely filing requirements of Rule 4(a)(5). In *Perez*, the court dealt specifically with whether relief from an untimely appeal was available under Rule 60(b)(6), the "extraordinary circumstances" exception. The court recognized that § 2107—the statute on which Rule 4(a) is based—contains no "extraordinary circumstances" exception, or *any* exception other than the two implemented in Rule 4(a)(5) and Rule 4(a)(6). *Id.* at 179. Hence, the court reasoned that "Congress does not intend for any exceptions, other than the ones already codified, to be used by parties to avoid strict compliance with appellate deadlines." *Id.* Accordingly, the use of Rule 60(b) would contravene the clear rule in *Bowles* that courts cannot create exceptions to statutorily-based jurisdictional requirements. *Id.* The court cited several unpublished dispositions from other circuits in light of *Bowles*, as well as the D.C. Circuit's published decision in the *In re Sealed* case, that reached the same conclusion. *Id.* at 180 (citing cases).

The only circuit to agree with the majority's position today is the divided decision of the Sixth Circuit in *Tanner v. Yukins*, 776 F.3d 434 (6th Cir. 2015). *Tanner* reaffirmed the

Sixth Circuit's pre-*Bowles* decision in *Lewis v. Alexander*, in which the court held that Rule 60(b) could be used to restart the time to file an appeal where a party's attorney had inadvertently untimely filed and did not realize this until after the thirty-day grace period in Rule 4(a)(5) had expired. *See Tanner*, 776 F.3d at 443–44; *Lewis*, 987 F.2d at 394–96. In *Tanner*, prison guards prevented a habeas petitioner from getting to the library to sign her notice of appeal during a prison lockdown. *Tanner*, 776 F.3d at 436. She signed it and sent it the next day, but the notice was already untimely. Of course, she failed to realize this during the thirty-day grace period provided by Rule 4(a)(5). *Id.* at 437. Tanner brought a 1983 suit against the prison guards for causing the untimely filing of her notice of appeal, and won. She then sought relief from the untimely filing under Rule 60(b), and the Sixth Circuit concluded that she had shown "extraordinary circumstances" because of the guards' conduct. But the court distinguished *Bowles* along the same superficial lines that the majority does here, noting only that *Bowles* dealt with the exception under Rule 4(a)(6) and said nothing about Rule 60(b), and without discussing the nearly identical statutory basis for Rule 4(a)(5). *Id.* at 438–41. Ironically, the court might have shown its hand when it remarked that the petitioner in *Tanner* was "deserving of an equitable outcome." *Id.* at 443. In short, *Tanner* offers no reasoned argument that would support the majority's position here.

The majority's reliance on our decision in *Mackey v. Hoffman* is equally unpersuasive. *Mackey* is, at best, irrelevant to the circumstances of this case, and at worst, a deeply flawed decision that conflicts with the Supreme Court's decision in *Bowles*. *Mackey* held that "attorney abandonment" constitutes an extraordinary circumstance under Rule 60(b)(6) justifying relief from judgment in order

to extend the time to file an appeal. *Mackey*, 682 F.3d at 1253–54. Mackey's attorney stopped pursuing his case without informing him after Mackey's parents stopped paying his legal fees, and as a result, Mackey missed the deadline to file a notice of appeal from the district court's denial of his habeas petition. *Id.* at 1248–50.

In finding that Rule 60(b) could be used to extend the time to file an appeal due to the attorney's misconduct, the panel relied on the Supreme Court's decision in *Maples v. Thomas*, which held that attorney abandonment could constitute sufficient cause to lift a state procedural bar to federal habeas review. 132 S. Ct. 912, 927 (2012). State procedural bars may be excused where a petitioner can demonstrate cause for the procedural default that was beyond his control, and actual prejudice from the violation of federal law. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In *Maples*, the petitioner's attorneys changed jobs and stopped pursuing the case, without ever informing the petitioner, and as a result, the petitioner missed a state filing deadline. 132 S. Ct. at 919–20. The Supreme Court noted that generally, attorney negligence does not excuse a petitioner's default, but that the situation was different where "an attorney abandons his client without notice, and thereby occasions the default." *Id.* at 922. Accordingly, the Court found that the petitioner had demonstrated sufficient cause to excuse the state procedural bar. Note, however, that *Maples* dealt with an equitable exception to the judge-created, i.e., non-jurisdictional, procedural bar doctrine. *Id.* at 922. It had nothing to do with jurisdictional time limits, *Bowles*, or Rule 60(b), and therefore presents a rather uncertain basis on which to justify what the panel did in *Mackey*: bypass a jurisdictional time limit using Rule 60(b).

*Mackey*, unlike *Maples*, implicated the jurisdictional problem addressed in *Bowles*, and that we face here today. Like the Sixth Circuit and like the majority here, the *Mackey* panel dealt with *Bowles* in the same facile manner, dismissing *Bowles* because *Bowles* dealt with the notice of judgment problem addressed by Rule 4(a)(6), again without considering the identical statutory basis behind Rule 4(a)(5). *Mackey*, 682 F.3d at 1253. I am therefore deeply skeptical that *Mackey* was correctly decided in the wake of *Bowles*.[10]

Even assuming, however, that *Mackey* is correct, there was no attorney abandonment in Washington's case, making *Mackey* inapplicable here. Even Washington does not argue that his attorney "abandoned" him by miscalculating a filing deadline and filing the notice of appeal *one* business day late.[11] As I noted in footnote 5, *supra*, this kind of mistake is far from "extraordinary"—it is simple negligence that is, unfortunately, all too common. There is nothing exceptional about this case that warrants an extension of *Mackey*.

---

[10] The Seventh Circuit recently followed the *Mackey* decision in *Ramirez v. United States*, 799 F.3d 845, 854 (7th Cir. 2015), a similar attorney abandonment case. The reasoning in *Ramirez* is, in some ways, even more puzzling than that in *Mackey*. *Ramirez* likewise relies on a number of Supreme Court cases dealing with the procedural bar doctrine, as well as cases regarding AEDPA's prohibition on successive habeas petitions, to justify using Rule 60(b) to restart the time to file an appeal. *Ramirez* does not even mention *Bowles*.

[11] In fact, the panel in this case remanded the case to the district court after *Mackey* was decided to determine whether Washington had suffered attorney abandonment. The district court concluded that he had not. Washington has not challenged this finding in the current en banc proceedings.

C

The majority concludes that *Bowles* has no bearing on this case because *Bowles* did not disturb the historical practice of using Rule 60(b) to extend the time to file an appeal. But the historical practice on which the majority relies is dubious at best; there is a slew of case law that weighs against the extension of this practice to the situation before us in this case. However, even if the majority is correct as to how Rule 60(b) was once used, *Bowles* makes crystal clear that such a practice is no longer an option. There is no difference between creating an "equitable exception" to the time limits in Rule 4(a) and using Rule 60(b) to "restore the opportunity to appeal," Maj. Op. at 12: both mechanisms extend the time to file an appeal past the time limit that has been set by Congress, time limits which the Supreme Court has concluded are jurisdictional. The majority's attempt to suggest otherwise is utterly unconvincing. I am persuaded that Rule 60(b) simply does not provide relief from the untimely filing of a notice of appeal.

II

Lastly, I wish to remark on the argument made by the majority regarding an "error" made by the district court in this case in failing to promptly notify the circuit that Washington had filed a notice of appeal. At the time Washington filed his notice of appeal, Rule 3(d) of the FRAP required the district court to "promptly send a copy of the notice of appeal" to the circuit court. Fed. R. App. P. 3(d). However, Rule 3(d) did not specify a time within which the district court must act. The rule did not even identify from which point the district court's "promptness" is to be measured—whether the notice must be "promptly" forwarded

upon the district court's receipt of it, or "promptly" upon occurrence of some other event. FRAP 22(b)(1), which has since been amended, required the district court to "send the certificate [of appealability] or statement [why a certificate should not issue] to the court of appeals with the notice of appeal and the file of the district court proceedings." Fed. R. App. P. 22(b)(1) (1998). The district court clerk in this case waited until the district court had ruled on Washington's certificate of appealability—a prerequisite to our jurisdiction—before sending the certificate of appealability, together with the notice of appeal and the district court record, to this court, as Rule 22(b) required.

The majority concludes that this was error, because the district court clerk did not "promptly" send the notice of appeal to the circuit as soon as the notice of appeal was filed, but rather waited until the certificate of appealability had issued. Moreover, the majority argues, this error prejudiced Washington: if the district court clerk had sent the notice of appeal to the circuit as soon as it was filed, our clerk's office would have issued an order to show cause earlier, and Washington's attorney might have realized the appeal was late in time to request an extension of time to file an appeal within the thirty-day grace period provided by Rule 4(a)(5). Maj. Op. at 30–31. In other words, Washington's negligence—or that of his attorney—was all the district court's fault, because the district court clerk "prevent[ed]" Washington from being able to timely file. Maj. Op. at 5, 8, 20, 28, 28 n.10.

This is an extraordinary statement by the majority. I have no interest in opining on a version of the FRAP that no longer exists, but the majority's argument on this issue is so strained that I am compelled to briefly address it. At the time, the

district court was not required, as it is now, to issue or deny a certificate of appealability at the same time it issued its final order regarding the merits of the habeas petition. *See* Fed. R. App. P. 11(a). It was apparently common practice for our district courts to issue an order addressing the petition on the merits, and then separately address the certificate of appealability, sometimes weeks or months later. Under the majority's new reading of FRAP 3, the district court clerk was required to forward the notice of appeal to the circuit court twice: first, when the notice of appeal was initially filed, in order to comply with Rule 3(d), and second, after the certificate of appealability was issued, in order to comply with Rule 22(b)(1). This makes no sense. As the majority acknowledges, the notice of appeal and the certificate of appealability, when forwarded together, give the circuit court clerk notice of the transfer of jurisdiction of the case. Maj. Op. at 29; *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992). But without the certificate of appealability, the circuit *has* no jurisdiction. What, then, would be the purpose of forwarding the notice of appeal before the certificate of appealability issues? To inform the circuit that jurisdiction *may* transfer in the future? The majority cites no relevant case law from any court in support of this novel reading of the rules. The one case the majority cites in support of its proposition is *Yadav v. Charles Schwab & Co.*, 935 F.2d 540 (2d Cir. 1991), a *non-habeas* civil case, meaning that Rule 22(b) was not implicated there as it is here. Certainly I do not disagree with the holding of *Yadav* that when *only* Rule 3 is in play, Rule 3 requires the district court clerk to forward the notice of appeal to the circuit court sooner rather than later. But the issue here is how Rule 22(b)'s requirement of a certificate of appealability—including the certificate of appealability's attendant effect upon our jurisdiction—

informs the operation of Rule 3 in the specific context of habeas cases.

Although the rules may have been inartfully drafted, an alternative, more logical reading of the rules—one the majority does not even consider—is that the rules required the district court clerk to "promptly" forward the notice of appeal *once the certificate of appealability issued*, not once the notice of appeal was filed. Such a reading harmonizes the two seemingly contradictory directions provided in the FRAP. Rule 22 is specific to the habeas context, while Rule 3 applies generally to notices of appeal in all cases. Presumably, in non-habeas cases—in cases where no certificate of appealability is required—the district court would "promptly" forward the notice of appeal to the circuit court as soon as the notice was filed. But in the habeas context, Rule 22 appears to give more specific instructions—to forward the notice of appeal with the certificate of appealability—thus requiring the court clerk to wait until the certificate of appealability actually issued. Once the certificate of appealability issued, the clerk could then "promptly" forward the notice of appeal together with the certificate of appealability and the record to the circuit court, as Rule 22(b) required. That is exactly what the district court clerk did here, and I see no reason to accuse the district court of error in an underdeveloped argument based on a reading of the FRAP with no support in logic or case law.

Even assuming, however, that the district court clerk *did* err in its reading of the rules, *Bowles* tells us that this does not matter. In *Bowles*, the late filing really *was* the district court's fault, as the district court gave the petitioner an extra three days past the permitted extension period, and the petitioner relied on this extension. The Supreme Court held

that this was irrelevant, given the jurisdictional nature of the time limits at issue. *Bowles*, 551 U.S. at 207, 214. The situation in this case is no different. If anything, it is less sympathetic. In *Bowles*, the defendant followed what the district court told him he should do. Here, counsel made his own mistake and *might* have been alerted to his error if the district court had forwarded the notice of appeal to this court and if we issued a prompt order to show cause within the thirty day grace period.[12] Neither counsel's error nor the timing of the district court's forwarding of the notice of appeal can avoid the time for filing an appeal.

## III

In short, the majority has offered no reasoned explanation for its decision to ignore the Supreme Court's dictate in *Bowles*, the text of Rule 60(b) and Rule 4(a), or the reasoning of our sister circuits. It has utterly failed to explain how a claim-processing rule like Rule 60(b) can be used to undermine a jurisdictional, statutory filing requirement promulgated by Congress. And it ignores the consequences of its decision today: that in allowing relief under Rule 60(b) from an untimely appeal, the court puts a hole right through the Rule 4(a) timing requirements, now giving parties *up to a year* to attempt to pursue an appeal. That cannot be correct. And while I am sympathetic to the petitioner's particular plight in this case, I note that federal courts regularly and

---

[12] The majority, however, has identified no statute or rule requiring this court to provide notice—in the form of an order to show cause why the appeal should not be dismissed—that an appeal is untimely. Even if the majority's reading of FRAP 3 and 22 were correct, the district court's timing in forwarding the notice of appeal did not deprive Washington of any notice to which he was entitled. Nothing in the district court's actions "prevented" Washington's counsel from filing a timely notice of appeal.

completely *preclude* review in federal habeas cases—even capital cases—where a would-be habeas petitioner fails to timely file within the one-year statute of limitations. *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) (declining to apply equitable tolling to a habeas petition in a death penalty case where the petitioner's attorney miscalculated the statute of limitations)[13]; *Pace v. DiGuglielmo*, 544 U.S. 408, 418–19 (2005) (declining to apply equitable tolling to a petitioner sentenced to life without parole); *Damren v. Florida*, 776 F.3d 816, 821–22 (11th Cir. 2015) (per curiam) (declining to apply equitable tolling to a habeas petition in a capital case); *Rouse v. Lee*, 339 F.3d 238, 243 (4th Cir. 2003).   I would affirm the judgment of the district court.[14]   As I said at the outset, I take no pleasure in that judgment, but it is the judgment required by law.

I respectfully dissent.

---

[13] *See Lawrence*, 549 U.S. at   336–37: "Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling.  If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."

[14] I note as well, that although the majority concludes the district court was wrong when it found that it did not have the power to use Rule 60(b) to reopen the time to file an appeal, rather than remanding to the district court to reconsider whether Rule 60(b) relief is warranted in light of our new holding, the majority just concludes that it is.  Thus we engage in a bit of self-help, expanding our own jurisdiction by concluding that the district court simply abused its discretion by not affording relief.

WATFORD, Circuit Judge, dissenting:

I join Judge Bybee's dissent, but like him I take no pleasure in voting to dismiss Theodore Washington's appeal. Dismissing the appeal because his lawyer filed the notice one day late strikes me as a grave injustice in the circumstances of this case. We are nonetheless compelled to take that action because *Bowles v. Russell*, 551 U.S. 205 (2007), held that the filing deadline for civil appeals is jurisdictional and thus not subject to equitable exceptions. *Id.* at 214. I offer a few thoughts below as to why that holding is worth revisiting, should the Supreme Court decide to take up the issue.

To begin with, neither of the rationales offered by the Court to support the decision in *Bowles* is sound. The Court relied in part on the fact that Congress itself set the filing deadline for civil appeals in a statute, 28 U.S.C. § 2107, rather than delegating authority to the courts to set the deadline by court rule. 551 U.S. at 210–13. But that fact proves nothing, really, about what Congress intended. Just because Congress can limit the jurisdiction of federal courts by statute does not mean that it intends every filing deadline fixed by statute to be of jurisdictional stature. We know that to be true because most of the filing deadlines set by Congress in federal statutes of limitations (a close analog here) have been held to be non-jurisdictional. *See, e.g.*, *United States v. Wong*, 135 S. Ct. 1625, 1632–33 (2015); *Holland v. Florida*, 560 U.S. 631, 645 (2010); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 93–96 (1990). Thus, as the Supreme Court has explained, we would need some clear indication from Congress that it meant a particular filing deadline to be treated as jurisdictional beyond the fact that the deadline appears in a statute. *Wong*, 135 S. Ct. at

1632. As I will explain shortly, no such indication appears with respect to the time limits set by § 2107.

The other rationale for *Bowles*' holding cannot support the decision standing alone. The Court relied on its long historical practice, reflected in cases dating back more than a century, of treating deadlines for filing appeals from one court to another as jurisdictional. 551 U.S. at 209–10. The precedents the Court cited, including *United States v. Robinson*, 361 U.S. 220 (1960), do indeed refer to appellate filing deadlines as "jurisdictional." *Id.* at 224. But each of those cases was decided before 2004, the year the Court began to correct what had been, in past cases, its "less than meticulous" use of the term "jurisdictional." *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004). Beginning with *Kontrick*, the Court articulated a more precise definition of the term, one limited to requirements that describe the classes of cases a court is competent to adjudicate. *Id.* at 455; *Scarborough v. Principi*, 541 U.S. 401, 413–14 (2004). Just two years before *Bowles* was decided, the Court identified *Robinson* as a chief source of the prior confusion and explicitly disavowed *Robinson*'s flawed conception of the meaning of "jurisdictional." *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam).

While *Bowles* left the Court's law "incoherent" the day it was decided, 551 U.S. at 220 (Souter, J., dissenting), *Bowles* has become even more of an outlier since then. With one exception, the Court's post-*Bowles* cases have routinely held statutory filing deadlines to be non-jurisdictional. *See, e.g.*, *Wong*, 135 S. Ct. at 1632–33; *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817, 824–26 (2013); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 441 (2011); *Holland*, 560 U.S. at 645. (The one exception is *John R.*

*Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), which, much like *Bowles*, rested entirely on *stare decisis* grounds, not on an analysis of the statute under the Court's current framework for determining whether a requirement is of jurisdictional stature. *See Wong*, 135 S. Ct. at 1636.) *Bowles* sticks out as an unprincipled exception to this trend, and it has justifiably been the subject of academic criticism for that reason. *See, e.g.*, Scott Dodson, *The Failure of* Bowles v. Russell, 43 Tulsa L. Rev. 631, 634–43 (2008); Erin Morrow Hawley, *The Supreme Court's Quiet Revolution: Redefining the Meaning of Jurisdiction*, 56 Wm. & Mary L. Rev. 2027, 2051–59 (2015); Howard M. Wasserman, *The Demise of "Drive-By Jurisdictional Rulings,"* 105 Nw. U. L. Rev. 947, 964–66 (2011).

*Bowles*' holding cannot be reconciled with the Court's current view of what it means for a requirement to be jurisdictional. An appellate filing deadline does not define the classes of cases federal courts of appeals are competent to adjudicate; it merely sets a time limit on a procedural step necessary to move the litigation forward. The Court has observed on more than one occasion that "time prescriptions, however emphatic, are not properly typed 'jurisdictional.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (internal quotation marks omitted).

If the time limits set by § 2107 were analyzed under the approach employed in the Court's most recent cases, they would undoubtedly be ranked as non-jurisdictional. Section 2107 contains no clear statement of Congress' intention to make the filing deadline for civil appeals jurisdictional; the statute's language is no more emphatic, and no more jurisdictional in tone, than any of the other filing deadlines that the Court has held to be non-jurisdictional. *See*

*Wong*, 135 S. Ct. at 1632–33; *Auburn Regional*, 133 S. Ct. at 824. The fact that Congress left undisturbed a long line of the Court's cases that (erroneously) ranked appellate filing deadlines as jurisdictional cannot transform the plainly non-jurisdictional language of § 2107 into a clear statement that the time limits specified there were intended to be jurisdictional. I cannot think of any other area in which the Court, having imposed a clear statement rule, has then been willing to accept congressional silence or inaction as adequate to satisfy the rule.

Nor does § 2107's placement within the broader statutory scheme reflect an intention to make the time limits jurisdictional. Section 2107 appears in a part of Title 28 entitled "Procedure," not in the part entitled "Jurisdiction and Venue" that contains the provisions governing appellate jurisdiction (such as §§ 1291 and 1292). The Court has relied on precisely this sort of placement decision when holding other filing deadlines to be non-jurisdictional. *Wong*, 135 S. Ct. at 1633; *Henderson*, 562 U.S. at 439.

Legislative history, another tool that the Court has used in this area, *see Wong*, 135 S. Ct. at 1633, also offers no clear indication that Congress intended the time limits in § 2107 to be treated as jurisdictional, rather than as run-of-the-mill time prescriptions. In fact, § 2107's legislative history reveals that Congress fixed the section's particular time limits based on a pre-existing court rule, to which Congress merely sought to conform the statutory provision. *See* 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.1, at 186–88 (4th ed. 2008).

Finally, appellate filing deadlines fit precisely within the definition of what the Court has called "claim-processing

rules," that is, "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435. As the Court's recent cases make clear, claim-processing rules are "[a]mong the types of rules that should not be described as jurisdictional." *Id.*

In sum, *Bowles* stands on shaky ground and merits reconsideration. Nevertheless, it controls here and, if faithfully applied, requires us to dismiss Washington's appeal as untimely, even at the cost of ending Washington's bid to obtain habeas relief from his death sentence on grounds similar to those that spared his co-defendant's life.